Your Honor, this is the first case in the morning called 211-746, Pupil v. Illinois v. Joseph Summers. On behalf of the Appellant, Ms. Josette Skelnick. On behalf of the Pupil, Mr. Barry Tate. Thank you. Ms. Skelnick. Good morning, Your Honors. May it please the Court. My name is Josette Skelnick. I'm here this morning on behalf of Joseph Summers. Mr. Summers pleaded guilty to the offense of attempt predatory criminal sexual assault and was sentenced to 15 years imprisonment. He's asking on appeal that his plea be vacated because it was not knowing and intelligent at the time it was entered. And the reason is because basically, as I understand the argument, the court's admonitions were defective because under your argument, the defendant here was statutorily ineligible for probation. Yes. Reduced to its simplest terms, that's the argument. Yes. He was advised and in fact, I think the record is clear that the crux of the agreement in this case was his eligibility for probation because we actually have a record of what happened leading up to the plea, which came about with the motion to vacate the plea. The parties initially were negotiating and the state had offered a plea to predatory criminal sexual assault with a consecutive sentence. The defendant rejected that offer and it was not until they reduced this offense to an attempt and sought out the assurances of the judge that the judge would agree with their representation that it was probationable, that's when the plea was entered. The state's argument would be that he was. Now, to ask you a very pointed question, why doesn't the Warnke case control this? Okay, well first, the state in the appeal has agreed with the defense position that he was not eligible, so they do agree that he was not eligible. Warnke, there's a couple things about Warnke. First of all, what the court in Warnke said about C2F actually was not a holding in that case. It was essentially an advisory opinion, so first of all, I don't think it has any precedential value because in that case the court reversed the defendant's conviction, so it wasn't anything that was necessary to the decision and really shouldn't have even been addressed. Secondly, the court in Warnke, the analysis of the court really undermines the court's opinion as to whether a person in these circumstances is eligible for probation. The court in Warnke agreed, the state had argued in Warnke that under the plain language of the statute that it didn't matter the sequence of the convictions, as long as the conviction was within 10 years either backwards or forwards. The court in Warnke said that's a reasonable reading of the statute. The plain language of the statute supports the state's construction. If the plain language of the statute supports that construction, then the court shouldn't be going any further. Okay, let me ask you this because you're sort of, to be very blunt with you, in an anomalous situation. Yes. The rule of lenity would be, I think you probably can see, that you'd want to interpret the statute in a manner that's favorable to the defendant, which was the interpretation in Warnke. You're arguing for sort of the opposite here. Do you want a rule that says that it does make a difference or it doesn't make a difference? What I think, what I'm saying is the rule of statutory construction has, if you apply the rules and let's even assume that they thought there was some ambiguity, the rule of statutory construction is not, okay, once you have an ambiguous statute, you apply lenity. That is not the primary rule of statutory construction. Don't you want lenity to apply when you're arguing on behalf of a defendant? You may want to, but it's contrary to the primary rule of statutory construction, which is to ascertain the intent of the legislature. Well, wasn't lenity applied? Was lenity applied here? In Warnke. Well, I don't think the court really needed to get to that. I don't know that lenity was applied because the defendant's conviction was vacated, so there wasn't even an issue as to that. Assuming, though, that lenity was applied, lenity should only be applied when both interpretations from opposing parties are reasonable. So assuming that the court was intelligent enough to understand this, in addition to saying that the state's position was reasonable, it also said that the defendant's position was reasonable. So in that instance, if the defendant's position is reasonable, then counsel probably wouldn't be deemed to be ineffective for making that argument. So in that case, that attorney was deemed not ineffective for making the argument, but you're making the opposite argument. Does that mean that you're ineffective? No. I think it means that the appellate court in Warnke disregarded the primary rule of statutory construction and that was not reasonable. I've cited several cases in the brief that discuss the fact that the legislative intent Normally, what is the first rule of statutory construction? is to ascertain and give effect to the intent of the legislature. And what is the rule of lenity in relation to that? The rule of lenity is if there is an ambiguity in a penal statute, if it's not inconsistent with legislative intent, then lenity can be applied. I believe the rule of lenity is that when there are two reasonable interpretations which would embody the legislative intent, that insofar as cases in which the liberty interest was concerned, the presumption will be that the legislature was exercising lenity or the court should do so and take the interpretation most beneficial to the defendant. So would it be fair to say that the rule of lenity is actually an exception to a precise determination through the vehicle of a presumption that benefits a defendant when there appears to be, as they say in baseball, a tie at first base? Well, I guess with respect to this particular issue, the rule of lenity would apply if the statute is ambiguous and there's no other indication of what the legislature may have intended. They look at legislative history, they look at other similar statutes. So if there were, for example in this case, when the legislature wants to define the application of the statute by the timing of the offenses, they've done that. The appellate court in Wanky didn't even consider that in making its advisory opinion essentially. And this is a, I'm sorry. And you keep calling it an advisory opinion. It vacated this matter and sent it back for trial. If Mr. Wanky had been found guilty, he would have had to be sentenced. And what they were doing is saying this is likely to come up again and we are going to try to head off the problem. So it's not truly advisory, and Justice McClaren is right. They determined very specifically that under the principle of lenity, penal statute should be strictly construed in favor of the accused. And a general policy of lenity, you wouldn't ever, applies to the interpretation of the criminal statute. So, I mean, I don't understand, first of all, why we're having this discussion that it's not applicable. But secondly, I think it's clearly what they did. And the court said if he's found guilty again, you know, you have to consider this. And so now we have to apply this to our case. And after Wanky, were there any changes in this particular statutory authority that would make it any clearer? Only that other courts have interpreted, I mean, this court itself and Harmon interpreted it as unambiguous in saying that it included in that particular case, yeah, in that particular case the defendant was making an argument that the statute was ambiguous because it referred to Class II felonies, and Class II felonies was a technical term used in Illinois statutes so that it only included Illinois convictions and not out-of-state convictions. Well, that's not the same issue here. Right, but what I'm saying is, sure, you could construe the statute that way, but the appellate court said no, that's not a fair construction of the statute. But it doesn't have anything to do with what comes first, you know, if Chicken A doesn't, that's not the issue that we're faced with in this case. But when you look at, the statute says... But that was the issue in Wanky, by the way. Right. The statute says if the offender had been convicted within 10 years of the date on which the offender committed the offense, within does not include only after the conviction. Within includes offenses that occurred before the conviction. Are we really getting off-site track here? Without discussing the fine points and parameters of Wanky and other issues, the issue really, to me, what it all boils down to is, were the admonitions improper? Okay? Assuming we accept your argument that we shouldn't follow Wanky, even if we were to accept that, it seems to me the issue is, were the admonitions proper with respect to probation at the time, and were they consistent with prevailing law? So if Wanky was prevailing law, we decide that. I think that trumps the argument that the admonitions were improper, because you have to judge this, do you not? Case law is clear that the prevailing law at the time of the admonitions, not what is decided later. The law could change later, and that wouldn't affect the validity of a plea, would it? Well, I think because the Wanky court was not properly interpreting the statute, the trial judge really doesn't have authority. It's a situation that's kind of like a separation of powers issue. The trial court doesn't have the authority to ignore the plain language of the statute. If there's an aberrant case out there that isn't well-reasoned, I don't know that that trumps the legislative mandate. In hindsight, we would judge that, then, if we followed the logic of your argument. Yes. Wanky says that later on we decide that it wasn't correct, and then everything falls after that, right? Right. Well, and I mean there is a situation, for example, with the comparative analysis with the Illinois Constitution where the Supreme Court, for a period of time, was saying this offense is less serious and it's punished more harshly and use this analysis, and several people were sentenced based on that analysis and didn't get the add-on. And then the Supreme Court said, oh, you know, that was wrong, and everyone on direct appeal suddenly was facing a sentence  I'm not sure those cases related to whether or not an admonition was correct or incorrect. Well, I guess what I'm saying is if the analysis is improper or not based on proper rules of statutory construction, then the trial judge, I mean, first of all, the trial judge in this case I don't even think had any awareness of what, I don't even know what the parties were relying on. This was all done the day that the case was set to go to trial. The fact that someone is ignorant does not mean that they're wrong. Correct. So whether or not this judge, you know, was learned hand or Oliver Wendell Holmes is really not material. The question is whether or not his admonition was correct. And he could have intentionally done it wrong and still been right. So your argument is a non sequitur. It has nothing to do with whether or not the admonition was correct. Well, my argument is basically that if you read the plain language of the statute, that precludes a sentence of probation. Yes, but there was a holding in the case that suggested that the plain reading of the statute was in conflict with another plain reading of the statute, which was presented by a defendant. And the rule of lenity says that when the statute can be read clearly and distinctly or precisely two different ways and they're both reasonable, neither one is the precise interpretation. But we're going to lean over in favor of the defendant because he's going to be put in jail. So if we applied the rule of lenity in this case, we would interpret the law in favor of your client as well. And you don't want that to happen. You want to say I don't want the rule of lenity to apply. I want to, quote, unquote, vacate my plea because I want to be flagellated or tortured or maimed or whatever so that I can get out of it. And the problem with your argument is it's internally inconsistent. It's a paradox. Well, I would say, Your Honor, I guess what we're disagreeing on is was the wanky court's interpretation of the statute reasonable. But since that's the only law we're aware of, and in your own comments just now you said the Supreme Court did this and that, the Supreme Court has not done anything about it. No one has the legislature. And we know as lawyers and judges that there are little mice down there in the legislative bureau that look at these things and say, well, we have a problem here. We have to change it. That hasn't happened either. So how can this trial judge be said to have improperly admonished Mr. Summers, Mr. Wanky, Mr. Summers when the legislature didn't make any changes after the wanky court said there is an issue on this point and the Supreme Court didn't say that. So as much as we'd like to think we're the Supreme Court, it's not the case. And we have to also look at precedent, and precedent says this is the case. So how can we disregard it? I guess disregarding whether it's actually precedent. I mean, in fact, one of the other cases I cited actually applied the principle that the judge had not told the defendant his sentence could be consecutive to another sentence at a guilty plea. The defendant also made a separate argument that, well, the consecutive sentence violates apprendi. The appellate court said that's not appropriate for us to decide at this time because we're vacating your plea. So I don't know that the fact that the legislature didn't, I mean, I don't know what they could do at this point because my position is that the language already precludes it. So I don't know what the legislature could do to amend it. Well, three other judges and then the Supreme Court after them did not think it was important, didn't think it was necessary or didn't seek to do anything in wanking. Right. The three judges there said, and the language in wanking is we find that both the state's and defendant's reading of the statute is reasonable. When the statute can be reasonably interpreted in two different ways, it is ambiguous. And they cite other cases, including the Jamison case, which is a Supreme Court case from 1994. Well, and I know that Harmon addressed a different position, but Harmon court, which was also a second district court, said this particular provision was not ambiguous. It's plainly stated. And I mean, the state also is agreeing with me that looking at the plain language of the statute, this particular defendant was not eligible for probation. So you're asking us in essence to take a long hard look on whether wanking was correctly decided. Okay. Correct. And if we decide that wanking was correctly decided, where does that leave you? Then he was eligible for probation for sure. Yeah. Your brief doesn't seem to indicate that you believe that your client wishes to invoke lenity. Is that correct? My client wants to have an opportunity to go to trial. That's what I thought. So essentially, in a roundabout way, that's a negative pregnant. You're saying that your client does not wish to take advantage of lenity. He wishes to take advantage of the clear and concise language as portrayed by the state, despite the holding and wanking. Correct. Are there any other questions? No. Thank you. Thank you. Good morning. I'm Barry Jacobs on behalf of the people. May it please court and counsel. In this case, there's really been no showing that a manifest injustice anyway was worked to this defendant that would allow him to withdraw his plea guilty. It's my position or the state's position in the brief. And this morning that regardless of whether or not the winky case is a good case, we believe it was wrongly or rightly decided. It did control the issue such that these admonishments that were given that this defendant was probation eligible were proper. The defendant had not raised this issue until appeal, filed three, I believe, three amended motions to withdraw the guilty plea, as well as a motion to reconsider the last denial. And this was never raised in the lower court. For it to be considered, the defendant should show or should be required to show that this was a matter of plain error. It's the state's position there was no error based upon the wanky case. I believe the court's interpretation of the statute differs from Harmon. However, Harmon presented a different fact pattern. In that case, in Harmon and Butler, both of which the defendant cites, there was a qualifying conviction prior to conviction at bar. This case, as in winky, presents the same scenario, that the qualifying conviction prior to was not present. It's the state's position that the rule of limited was properly applied to the statute in wanky. However, it is not consistent with the legislative intent as the state reads the plain language. Who do you make of Ms. Skelman's argument that the holding in wanky was advisory, was not stare decisis? It's one of our arguments. We shouldn't follow it because it really is not controlling on the issue. It's the state's position that the opinion was not supervisory or advisory. As I indicated, this was the exact scenario presented in the present case is the exact scenario presented in wanky. And as Your Honor, Justice Hutchinson noted, this case was going to be sent back. And this was an issue that the court felt would likely recur. And they were attempting to head off a problem. So it's the state's position that this is the controlling authority. It's the only authority on this particular scenario. Both Harmon and Butler and the other cases don't present the same pattern where there has been a subsequent conviction. Are you aware of any authority that suggests that a determination of either a question of law or a mixed question of law and fact in anticipation of a retrial or further proceedings in the trial court below is any less precedential? I'm not aware of any. Counsel, let me ask you this. If we were to decide for the sake of the argument that the client to follow wanky, would that necessarily be fatal to your case? I don't believe so. In this case, I think then the analysis would become more of whether or not the defendant had showed that he had a reasonable misapprehension regarding the sentence he was to receive. In this case, there was testimony both by the defendant and his wife that he expected or hoped to receive probation or a sentence of one to two years in prison. It's some minimal sentence. It's not what he did receive. And hence, we have his motions. And the trial court, if we were to go there, the trial court heard evidence about the allegations that were made. Heard some rather graphic evidence and was pretty positive in his, well, I don't want to talk about the facts, but was very positive about how he thought of this particular offense, notwithstanding the defendant's elocution that he won't be sorry, judge, if you give me another chance and things of this nature. Yes, the trial court made clear that it was not denying the defendant probation based upon this statute at issue here, but based upon his feeling that to grant probation or a minimal sentence would deprecate the seriousness of this offense. The state had recommended a sentence of 15 years, and the court imposed that sentence. And this particular trial judge has another argument that Miss Skelnick made. This particular trial judge, you know, is it new to the criminal courts? Is he, to the best of your knowledge? Not to my knowledge. I also think it's somewhat interesting, if not significant, that the Rule 402 conference that occurred in this case occurred prior to any offer by the state. The first offer was an offer on the predatory charge with a consecutive sentence on failure to register as a sex offender. It somewhat questions the defendant's argument that he was seeking probation at the time. He was offered, we don't know what he was offered in the first, exactly in the first offer by the state, but he did have the Rule 402 conference prior to any offers by the state. Miss Skelnick would say that he was not eligible for probation because that was a Class X felony, and he so desperately wanted probation that he waited until the state came around again and offered a plea on the attempt to charge. However, it's the state's position that that, coupled with the evidence that the defendant and his wife both testified, that he expected a minimal sentence. There's no showing that he relied upon this admonishment, that the court sentenced him based upon his ineligibility for probation, but based upon the seriousness of this offense. I would point out that the state does take issue, as I said initially, the state is not agreeing that he was ineligible for probation, as was noted in the reply brief by Miss Skelnick. The state only agreed that Wanky is not consistent with the plain reading as the state reads the plain reading of that statute. But in no way am I indicating that I agree that he was ineligible. Well, why is your argument germane if the trial court didn't consider your argument germane? If the trial court allegedly determined that probation was denied because of the severity of the offense and not because of clear and concise reading based upon the state's proposition, why is your argument relevant and material to the proceedings? Because I think it's called a counterfactual conditional, which means it has nothing to do with what happened in reality. My argument regarding whether or not the state believes Wanky was properly decided or wrongly decided or which particular argument, Your Honor, I'm sorry. Like you just said. It is not completely relevant. I was just correcting the perception advanced to that the state was in agreement. The state was in agreement with what? That Wanky, that he was improperly admonished. It's the state's position that he was properly admonished under Wanky. He was improperly admonished despite the fact that the trial court didn't use the statute for purposes of determining that it was not going to grant probation. It's the state's position he was properly admonished that he was probation eligible under Wanky. Although the record is not clear what the court was relying upon, it is somewhat significant to the state that both parties sought a rule four or two conference to determine whether or not the court would grant probation. Well, the trial court said. Consider it. Do you understand that based upon the belief of the state and the defense in your situation, you are eligible for a possible disposition of probation or conditional discharge? So that's what he was relying on when he admonished the defendant. Yes. When he sentenced the defendant, it's pretty clear reading that transcript that it had nothing to do with his admonition of probation. Yes. If I confuse the two, I apologize that it was on my position. Well, you did or I did or we both did or you and I and Ms. Skelman did. You're not going to get me into this trial. And you and Ms. Skelman. Get me out of this. Oh, my apology for that. It's the state's position, as I said, that there's been no manifest injustice shown in this case. And we would ask you to. Let me just know. And that's your position when you open when we're talking about manifest injustice. Don't we have to then discuss the plain error issue? If the court reaches the plane, it finds that there was error. Yes. Okay. But it's the state's position that there was absolutely no error in this admonishment based upon the controlling precedent at the time of the plea. Well, you can argue that there is no manifest injustice because there's no error. Or you can argue that there is no manifest injustice because even though there was error, it still wasn't manifestly unjustifiable. That's correct. So is it your position that it's the former and not the latter? It's my position that it is the former. However, if the court considers it, it is also the latter. Okay. I've never seen a small ladder. It was a former ladder and somebody cut it in half. But anyway, thank you very much. Thank you. Ms. Skelnick, have you ever seen Monty Python's Confuse-a-Cat? No, I haven't. I've seen some Monty Python, but not that one. I understand. The state has gotten up before this, and going back to Wanky again, the state said before this court today the rule of lenity was properly applied in Wanky, but it was not consistent with legislative intent. To me, that makes it an unreasonable interpretation. It's reading against the plain language of the statute. It's not a reasonable reading of the statute. And the court in Woodard, which I cited in my brief, said there's no rule of construction which allows the court to declare that the legislature did not mean what the plain language of the statute imports. The court in Wanky said yes, the plain language of the statute. They used the phrase plain language of the statute supports the state's position. So I don't believe that Wanky was reasonably decided. Have you ever seen the sign that says slow children? Does it mean that you're supposed to drive slowly because there are children in the area? Does it mean that in the area there are slow children? So which way do you interpret that? Knowing the rules of the road, I would interpret it as. Okay. So there's an outside source here. So in this instance, the outside source is the vehicle code. But in our case, the outside source is the rule of lenity. Do you see the similarity or maybe you don't? I guess I don't, Your Honor, because I don't think it's properly applied when it frustrates or defeats the legislative intent. And legislative intent is to punish more harshly repeat offenders, which you are when you have a second conviction within ten years of the other one. With respect to. So within for you is an umbrella as opposed to an arrow. Right. Okay. The state also indicated the defendant had to show he had a reasonable misapprehension regarding the sentence. I mean, yes, certainly the trial judge considered probation, but this is not a benefit of the bargain kind of thing where the judge said I'm considering your eligibility, I'm rejecting it. It's an admonishment thing as to what the defendant believed at the time he entered his plea. And I also. So assuming we have error here. Do you believe that it was likely that he was going to get a sentence less than the maximum? I don't think he was. His belief was objectively unreasonable, and I think the record shows why. First of all, both the state and the defense were concerned about their own cases. The state was concerned about the credibility of Molly Jensen. She was pretty much their whole case. And they were really kind of loathe to proceed to trial with her as their primary witness. He had also been on probation before, and I think, in fact, this judge was the one who gave him probation, successfully completed it. His plea was about as close as you could get to an Alford plea without actually making an Alford plea. And his whole sentencing hearing was directed at challenging the credibility of Molly Jensen, so. But apparently the trial court- But the trial judge- Did not accept or didn't buy the challenge to her credibility, found her credible. Right, the judge didn't. But I think the record reflects that even the state itself, the impetus for the plea on their end was, gee, we're not so sure we can get a conviction with Molly Jensen as our primary witness. So I don't think the defense- And they say that someplace in the- When they were discussing the terms of the plea agreement, I think the judge put on the record that the state is concerned about, it may have even been explicitly, the state is concerned about the credibility of its witness. And the defense was concerned, well, there's always a risk. Well, was that just Molly Jensen, or could it have been her son? You know, I think there's references in the record to the fact that she was the main witness. Well, I agree, she was the main witness. But what seemed to upset the judge most was the participation of her son, who was still a pretty young child at the time that this would have gone to trial. Yeah, I thought, I'm sorry if I- Like seven or eight? I thought there were references in the record to her being their sole witness. I know they decided not to introduce any 11510 statements. They said they were mostly directed at the mother. So it seemed, in my recollection, was they were pretty much relying on her. So I don't think it was so unreasonable for this defendant to believe that he could have gotten probation in this case. Do you by any chance recall what happened at the initial 402 counsel? Other than on the day of trial? I believe Mr. Jacobs said there was a 402 conference while the predatory charge was pending. No, on the day it was set for trial. The day it was set for trial was the day the plea was entered, and initially the state had made an offer of conviction on predatory with a consecutive sentence, and the defendant rejected that. Then they went back again and got assurances from the judge of eligibility for probation, and then the defendant entered. But that was all the same day. The 402 was on the day of the trial, as I recall. Right. I don't know if there were other ones earlier. I don't think there were any official ones. Any other questions? No. Thank you. We'll take the case under advisement. We'll take a short recess. Thank you.